**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
                          CAMDEN VICINAGE
_____
                                      :
LEWIS TROY,                           :
                                      :   Civ. No. 18-798(RMB)
            Petitioner,               :
                                      :
     v.                               :          OPINION
                                      :
DAVID E. ORTIZ,                       :
                                      :
            Respondent.               :
_____:
```

Petitioner,[1] an inmate incarcerated in the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix"), filed a Petition For a Writ of Habeas Corpus Under 28 U.S.C. § 2241, challenging the Bureau of Prison's ("BOP") decision concerning his placement in a residential reentry center ("RRC"). (Pet., ECF No. 1.) On March 19, 2018, Respondent filed an answer opposing habeas relief. (Answer, ECF No. 4.) Petitioner filed a reply on April 27, 2018. (Reply, ECF No. 6.) On May 7, 2018, Petitioner filed a motion to expedite. (Mot. to Expedite, ECF No. 7.) The Court grants Petitioner's motion to expedite. For the reasons discussed below, the Court denies the petition.

---

[1] Respondent notes that Petitioner used the name "Lewis Troy" in the caption of the instant petition, but BOP records show his name is Troy Deon Lewis, and his criminal case in the Western District of Michigan as captioned United States v. Troy Deon Lewis. (Answer, ECF No. 4 at 1.)

I.   BACKGROUND

On April 23, 2010, upon his conviction of conspiracy to distribute cocaine in violation of 18 U.S.C. § 846 & 841, Petitioner was sentenced by the United States District Court for the Western District of Michigan to a 144 month term of imprisonment, and five years of supervised release. United States v. Lewis, No. 09cr88 (W.D. Mich. April 23, 2010) (Docket No. 130.)[2] The court subsequently granted a motion to reduce the sentence to 120 months. Id. (Docket No. 159.) On April 11, 2013, Petitioner was sentenced to a three month consecutive term of imprisonment for possession of a prohibited object (a cell phone). United States v. Lewis, 13 cr24 (N.D.W. Va. Apr. 23, 2010) (Docket No. 13.)[3] Petitioner's projected release date is January 9, 2019. (Declaration of Tara Moran ("Moran Decl.") ECF No. 4-2, Exh. 1.)

Petitioner's unit team reviewed his RRC placement status in August 2017. (Declaration of Vannapha Macavoy ("Macavoy Decl.") ECF No. 4-1, ¶4.) After considering the factors set forth in 18 U.S.C. § 3621(b), the unit team determined that Petitioner was not an appropriate candidate for home confinement, and recommended an RRC placement of 241 to 270 days. (Id., and Attachment 5.) The unit team explained its decision:

> The BOP has bed space availability within the RRCs near the jurisdiction of supervised

---

[2] Available at www.pacer.gov
[3] Also available at www.pacer.gov

release. Inmate Lewis arrived at FCI Fort Dix, New Jersey, on April 25, 2017, as a Greater Security transfer. He is currently serving a 123-month aggregate sentence for Conspiracy to Distribute 50 Grams or More of Cocaine Base and Possession of a Prohibited Object (Cell Phone).

Inmate Lewis has been in custody since January 31, 2007. A review of classification materials reveals inmate Lewis has an extensive criminal history. Since entering custody of the BOP, inmate Lewis has participated in over 16 self-improvement programs. At the time of initial sentencing, the court ordered inmate Lewis to pay a $100.00 Felony Assessment, then, later [assed] another $25.00 Felony Assessment due to a subsequent federal conviction. Accordingly, inmate Lewis paid off his obligation to the court by participating in the Inmate Financial Responsibility Program. Despite his appropriate level of program participation, inmate Lewis has an extensive disciplinary history to include sanctions for three moderate level violations and one of the greatest severity.

Inmate Lewis' sentence is not subject to any pertinent policy relating to community-based transitional programming. The sentencing court has not made a recommendation in regard to RRC placement. To date, inmate Lewis has not completed the Residential or Nonresidential Drug Abuse Treatment Program. His Inmate Skills Development Plan has been reviewed; both Health Services and the Psychology department recommend inmate Lewis be referred for RRC placement.

Inmate Lewis had $786.27 deposited in his inmate Trust Fund Account over the last six months with a current balance of $15.00; however, he owes over $30,000 in back-due child support. Based on his lack of vocational skills, criminal history, and length of incarceration, the Unit Team has determined inmate Lewis demonstrates extraordinary and

> compelling needs requiring extended access to transitional services. As a result, the Unit Team is recommending a RRC placement of 241-270 days.

(Macavoy Decl. ¶4 & Attachment 5.) The warden of FCI Ft. Dix concurred with this recommendation, and sent the appropriate form to the residential reentry manager in Cincinnati, Ohio, the district where Petitioner would be released to an RRC. (Macavoy Decl. ¶5 & Attachment 6.)

Pursuant to BOP Program Statement 7310.04, the appropriate residential reentry manager must establish the RRC placement date, taking into consideration the recommendation of the inmate's institution as well as budgetary concerns and bed space. (Macavoy Decl. ¶6 & Attachment 7.) The residential reentry manager generally adheres to the placement date recommended by the inmate's institution, but is permitted to depart if necessary due to budget or bed-space constraints. (_Id._, Attachment 7 at 8.) The residential reentry manager provided Petitioner with a RRC placement date of November 9, 2018, due to lack of bed space in the district. (Macavoy Decl. ¶7 & Attachment 8.)

Petitioner submitted a grievance to the warden of FCI Ft. Dix on November 15, 2017, complaining that an RRC placement of sixty days "is not a fair amount of time" and requesting a "recalculation" under the Second Chance Act of his eligibility for home confinement. (Moran Decl., ECF. No. 4-2, ¶3 & Exh. 2.) On

4

December 15, 2017, the warden denied the grievance. (Moran Dec., ECF No. 4-2, ¶3 & Exh. 2.) Petitioner did not appeal. (Id., ¶3.) Instead, he filed the instant petition on January 19, 2018. (Pet., ECF No. 1.)

II.   DISCUSSION

    A.   The Parties' Arguments

Petitioner submits that he was serving part of his sentence at a minimum security Satellite Camp until he was transferred to the current facility at FCI Fort Dix after receiving an incident report. (Pet., ECF No. 1 at 3.) Petitioner appealed the sanctions for the incident report, and the BOP reduced the violation to a minor incident. (Id.) Petitioner asked his unit team to transfer him back to the Satellite Camp. (Id.)

Petitioner's unit team saw that Petitioner was within 17-19 months of his release date, and that he was eligible to spend the last twelve months of his sentence in an RRC or on home confinement, pursuant to the Second Chance Act. (Id.) They advised him he would be reviewed for RRC/home confinement placement instead of being sent back to the Satellite Camp. (Id.)

Petitioner's unit team determined that nine months RRC placement would meet his re-entry needs. (Id.) While the unit team was making this decision, Petitioner was waiting for approval of his new home address upon his release. (Id.) The unit team determined that home confinement was not appropriate for

5

Petitioner because his new home address had not been approved. (Pet., ECF No. 1 at 3.) After the unit team made this decision, Petitioner's new home address was approved. (Id.)

The Alvis House in Columbus, Ohio was chosen for Petitioner's RRC placement, and his initial release date to Alvis House was April 9, 2018. (Id. at 3-4.) The RRC manager told Petitioner's wife[4] that the next available bed was in November 2018, and therefore, his RRC placement would be reduced to two months, beginning on November 9, 2018. (Id. at 4.)[5] The unavailability of beds was due to budget cuts, and the RRC manager suggested that Petitioner request home confinement in the alternative. (Id.)

Petitioner asked his unit team to reconsider home confinement because two months in an RRC was insufficient for his reentry needs. (Id.) The unit team denied his request. (Id.) Warden Ortiz affirmed the unit team's decision. (Id.) Petitioner states that he is married and will be living with his wife when he is released. (Id. at 4-5.) Petitioner had received an employment promise in preparation for his RRC placement, and his employment was to begin in May 2018. (Id. at 5.)

---

[4] Petitioner submitted his wife's affidavit. (Affidavit of Kenisha Alexander, ECF No. 5.)

[5] Notably, Petitioner does not challenge the BOP's finding that bed space is not available at Alvis House until November 9, 2018.

6

Petitioner contends the BOP's failure to provide him with RRC placement or home confinement for nine months, as the BOP determined was appropriate under the factors described in 18 U.S.C. § 3621(b), necessarily shows that the BOP's two-month RRC placement decision was not based on the factors described in § 3621(b) but was solely due to unavailability of RRC bed space due to budget cuts. (Pet., ECF No. 1 at 4-5.) Additionally, Petitioner asserts the BOP's interpretation of the factors under § 3621(b) was unreasonable because the same factors must be considered for RRC placement and home confinement, and the statute does not distinguish between the two. (Id. at 5.) Thus, Petitioner concludes that if the § 3621(b) factors support a ninth-month RRC placement, the factors would also support a nine-month home confinement rather than a two-month RRC placement. (Pet., ECF No. 1 at 9, 11.)

Respondent filed an Answer and opposes habeas relief because Petitioner failed to exhaust his administrative remedies before filing the petition. (Answer, ECF No. 4 at 14-16.) Alternatively, Respondent contends Petitioner is not entitled to relief because the BOP made an individualized determination of Petitioner's RRC placement needs in compliance with the law. (Id. at 16-19.) Respondent argues Petitioner is entitled, on habeas review, only to have the BOP evaluate him for RRC placement under the appropriate factors. (Id. at 17.)

7

Respondent contends it is proper, under BOP policy, for a reentry manager to reduce an institution's placement recommendation based on lack of bed space. (Answer, ECF No. 4 at 18.) Further, Respondent asserts Petitioner's unit team considered Petitioner's eligibility for home confinement under the § 3621(b) factors and found him ineligible for home confinement based on his multiple disciplinary infractions, the most recent of which, possession of a cell phone, resulted in his prosecution and additional three-month sentence. (Macavoy Decl., Attachment 5.) Therefore, Respondent argues that if the Court reaches the merits of the petition, it should be denied. (Answer, ECF No. 4 at 19.)

Petitioner claims exhaustion would be futile because the BOP would deny relief at the higher levels of administrative review based on BOP policies. (Reply, ECF No. 6 at 14.) Furthermore, Petitioner contends exhaustion of his administrative remedies could take 140 to 220 days, and it would be too late for him to receive the relief requested. (Id. at 17-18.)

In reply to the merits of his petition, Petitioner acknowledges that BOP Program Statement 7320.01 provides additional criteria for consideration of home confinement pursuant to the Second Chance Act. (Reply, ECF No. 6 at 3.) The criteria include: (1) appropriate release residence; (2) no recent "MAJOR" disciplinary issues; (3) medical or mental health needs that can be met in the community and funded by the inmate or other

8

resources; (4) secured employment is not required. (Id.) Petitioner argues that none of these factors weigh against his home confinement. (Id.)

Petitioner relies on the BOP's May 24, 2013 memorandum, which, in addition to providing the above home confinement criteria, states:

> For low risk/low need inmates, home confinement is the preferred pre-release option. This option is currently under-utilized. Program Statement 7320.01, home confinement, may be provided by contract halfway house services, U.S. Probation, or other government agencies. This is normally accomplished via two home confinement options: placement under the supervision of an RRC or placement in the Federal Location Monitoring (FLM) program, operated by U.S. Probation, where available.

(Reply, ECF No. 6 at 6-7.) Finally, Petitioner asserts that the BOP policy permitting a manager of an RRC to reduce the time an inmate requires to meet his reentry needs based solely on lack of available bed space is unreasonable and inconsistent with the governing statutes. (Id. at 11.)

  B.  Legal Standard

   1.  Exhaustion of Administrative Remedies

A federal prisoner must exhaust his administrative remedies before filing a petition for writ of habeas corpus under § 2241. Vazquez v. Strada, 684 F.3d 431, 433 (3d Cir. 2012); Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760-62 (3d Cir. 1996). The

BOP has a four-step administrative remedy process. 28 C.F.R. § 542.10 *et seq*. The prisoner must first attempt informal resolution with prison staff. Id., § 542.13. If unsatisfied, the prisoner must submit an administrative remedy request to the warden. Id., § 542.14. If the prisoner wishes to appeal the warden's decision, the appeal is made to the appropriate Regional Director. 28 C.F.R. § 542.15. If the Regional Director denies the appeal, the final step is for the prisoner to appeal to the General Counsel in the BOP's Central Office. 28 C.F.R. § 542.15. After the Central Office considers the appeal, the administrative remedy process is exhausted. Id. § 542.18.

"Exhaustion is not required if administrative remedies would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury." Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (citing Babcock & Wilcox Co. v. Marshall, 610 F.2d 1128, 1138 (3d Cir. 1979)); Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (Roth, J, concurring).

    2.   RRC Placement

18 U.S.C. § 3624(c)(1)(effective April 9, 2008), as amended by the Second Chance Act of 2007, governs RRC placements. The statute provides, in pertinent part:

    (c) Prerelease custody.—

10

(1) In general.--The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

(2) Home confinement authority.--The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.

(3) Assistance.--The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during prerelease custody under this subsection.

(4) No limitations.--Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.

(5) Reporting …

(6) Issuance of regulations.--The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the Bureau of Prisons is—

> (A) conducted in a manner consistent with section 3621(b) of this title;

11

> (B) determined on an individual basis; and
>
> (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

The statutory factors the BOP must consider in making its RRC placement decisions are found in 18 U.S.C. § 3621(b):

> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence—
>
>> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>>
>> (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

On May 24, 2013, the BOP issued its most recent RRC guidance. (Macavoy Decl., Attachment 4, ECF No. 4-1 at 30-37.) The memorandum addressed the need to focus BOP's limited RRC spaces on inmates with the greatest needs and the highest risk of recidivism. (Id. at 30.) According to the memorandum, "RRM staff will not unilaterally deny RRC referrals or reduce placement dates unless

12

there are no available RRC beds within a reasonable distance for the specific referral date/length." (Macavoy Decl., Attachment 7 at 35.) Further, "if RRM staff determines a modification to a referral is needed or that other placement options are available . . . the change must be approved by the Warden." (Id. at 35.)

The memorandum also discusses inmate eligibility for direct home confinement, as outlined in BOP Program Statement 7320.01 and 18 U.S.C. 3624(c)(1). (Macavoy Decl., Attachment 7, ECF No. 4-1 at 34.) Basic criteria for home confinement includes:

> 1) Appropriate release residence (e.g., positive environment free from criminal/drug use activity and a reasonable distance from the RRC, typically less than 100 miles;
>
> 2) No recent major disciplinary issues. This should be based on sound correctional judgment;
>
> 3) Any medical or mental health needs that can be met in the community and funded by the inmate or other documented resources, and
>
> 4) Secured employment is not required for placement on home confinement.

(Id.) Judicial review of the BOP's RRC placement decision is limited to whether the BOP abused its discretion. Vasquez v. Strada, 684 F.3d 431, 434 (3d Cir. 2012).

C. Analysis

1. Exhaustion of Administrative Remedies

Petitioner did not appeal the warden's December 15, 2017 decision. Under the BOP's administrative remedy program,

13

Petitioner had twenty days to file an appeal to the Regional Director. 28 C.F.R. § 541.15(a). The Regional Director then had thirty days to respond, with the possibility of extending the response date for thirty days. Id., § 542.18. If the Regional Director denied relief, Petitioner had thirty days to file an appeal with the Central Office. Id. § 542.15(a). The Central Office had forty days to respond, unless it requested a twenty-day extension. 28 C.F.R. § 542.18.

Assuming that the Regional Director and Central Office extended time to answer his appeals, Petitioner would have exhausted his administrative remedies in 170 days, on June 4, 2018. The relief Petitioner sought was to be released on home confinement on April 9, 2018, equivalent to the high end of his unit team's RRC placement recommendation of 241-270 days. At the low end of the RRC placement recommendation, Petitioner would have been transferred to an RRC on May 8, 2018. Thus, Petitioner could not have obtained the full relief he seeks if he had first exhausted his administrative remedies by appealing the warden's December 2017 decision to the Regional Director and Central Office. See Strong v. Schultz, 599 F.Supp. 2d 556, 561 (D.N.J. Feb. 26, 2009) (finding exhaustion was futile where dismissal of petition as unexhausted would effectively moot the petitioner's § 2241 claim through no fault of his own.) Therefore, exhaustion of

administrative remedies is futile and the Court will address the petition on the merits.

### 2. RRC Placement Decision

Petitioner argues that the statutory factors the BOP must consider under § 3621(b) are the same for RRC placement and home confinement; therefore, a BOP determination that he should receive nine months in an RRC is inconsistent with the determination that he is not eligible for home confinement. Petitioner states "[n]owhere in 18 U.S.C. § 3624(c) or § 3621(b) says that when assessing an inmate for a pre-release custody placement, relevant factors should be taken into consideration differently when considering placements between RRC and home confinement." (Pet., ECF No. 1 at 9.)

Petitioner reads the statutes too narrowly. A BOP internal agency guideline is entitled to some deference if it is "a permissible construction of the statute." Reno v. Koray, 515 U.S. 50, 61 (1995) (quoting Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984) ("a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.")) 18 U.S.C. § 3624(c) requires the BOP to determine the proper placement for a prisoner's pre-release custody "under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the

15

community," and either RRC placement or home confinement are options for pre-release custody pursuant to § 3624(c)(1) and (2). The BOP must consider the factors under § 3621(b) in making such a determination. 18 U.S.C. § 3624(c)(6)(A). Although the same statutory factors are considered, certain factors may weigh in favor of RRC Placement over home confinement or vice versa.

Further, the May 24, 2013 BOP Memorandum setting forth "basic criteria" for home confinement corresponds to, and is not inconsistent with the § 3621(b) factors. For instance, the basic criterion of an appropriate release residence (e.g., positive environment free from criminal/drug use activity and a reasonable distance from the RRC) corresponds to the § 3621(b) factor concerning the resources of the facility. A petitioner's home as the facility for pre-release custody does not provide any resources to assist an inmate in avoiding drug use or otherwise avoiding criminal activity.

The basic criterion of "no recent major disciplinary issues" corresponds to the § 3621(b) factor of the history and characteristics of the prisoner. It is reasonable for the BOP to conclude that prisoners who have recently had major disciplinary issues may require greater supervision than is available under home confinement because the prisoner continues to have difficulty following rules. The home confinement criterion of whether the prisoner's medical and mental health needs can be met in the

16

community also corresponds to the § 3621(b) factor of the history and characteristics of the prisoner.

Finally, the BOP determined that secured employment is not required for placement on home confinement, which is consistent with the fact that employability of the prisoner is not a factor under § 3621(b). For these reasons, the BOP reasonably considered whether RRC or home confinement was the appropriate pre-release custody for Petitioner under the BOP internal policy memorandum and §§ 3624(c) and 3621(b). See Kaiser v. Hollingsworth, No. 16-1288, 2016 WL 6246308, at *4 (D.N.J. Oct. 25, 2016) (unit team did not abuse its discretion when it considered § 3621(b) factors and recommended 30 days of RRC placement rather than six months of home confinement).

Petitioner's next argument is that § 3624 directs the BOP to make an individual determination that ensures that pre-release custody placement is "of sufficient duration" to provide the greatest likelihood of successful reintegration into the community. (Pet., ECF No. 1 at 9.) Petitioner contends that permitting an RRC manager to reduce the duration of RRC placement based on availability of bed space is inconsistent with the statutory directive of ensuring a sufficient duration of pre-release custody to provide the greatest likelihood of successful reintegration into the community.

17

While Petitioner's contention has some merit, the BOP's policy permitting the RRC manager to reduce the duration of RRC placement only if there are no available beds for the specific referral date, and only upon approval of the warden, is not an unreasonable interpretation of § 3621(b). One of the factors to be considered for pre-release custody placement under § 3621(b) is "the resources of the facility." If the only RRC within a reasonable distance does not have a bed available on the recommended release date, it is not an unreasonable interpretation of the statute to provide RRC placement on the earliest availability after the date recommended by the unit team and warden, as determined by the residential reentry manager. See Hill v. Hendrix, Civ. Action No. 17-62, 2018 WL 1995524 (N.D.W. Va. Apr. 27, 2018) (prisoner's "RRC placement was reduced and subsequently eliminated based upon statutorily mandated factors that the BOP is required to consider when determining where to incarcerate an inmate, including the resources of the prospective incarceration facility (RRC bed space availability) and the history and characteristics of the prison ([inmate's] recent disciplinary infraction")); Cook v. Rivera, No. 12-853, 2012 WL 5199224, at *5 (D.S.C. Sept. 12, 2012) ().

The statutes do not require the BOP to reconsider home confinement after determining that RRC placement for the recommended duration is unavailable. Even if the policy Petitioner

urges is sound, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency. <u>Chevron</u>, 467 U.S. at 843. Therefore, the Court denies the petition.

III. CONCLUSION

For the reasons discussed above, the Court grants Petitioner's motion to expedite and denies the § 2241 petition.

An appropriate Order follows.

DATE: <u>May 21, 2018</u>                    s/<u>Renée Marie Bumb</u>
                                              RENÉE MARIE BUMB
                                              United States District Judge